PATRICK PRESTON, Respondent, *v.* THE CITY OF SYRACUSE,
Appellant.

CONTRACT FOR COMPLETION OF PARTLY ERECTED BUILDING — APPLI-
CATION OF PROVISION FOR PROTECTION OF WORK. A contract for the
completion of a partly erected building provided that "particular care
must be taken of all the finished work as the building progresses, which
work must be covered up and thoroughly protected from injury or deface-
ment during the erection and completion of the building." *Held,* that
this provision did not operate upon the contractor until his work com-
menced; and his commencement of work having been postponed by agree-
ment, *held,* that he was entitled to payment for extra work necessitated
by the deterioration of unprotected work in the meantime.

*Preston* v. *City of Syracuse,* 92 Hun, 301, affirmed.

(Submitted February 3, 1899; decided February 28, 1899.)

APPEAL from a judgment and order of the late General
Term of the Supreme Court in the fourth judicial department,
entered January 7, 1896, affirming a judgment in favor of
plaintiff entered upon a verdict directed by the court, and an
order denying a motion for a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*James E. Newell* for appellant. The plaintiff failed to
bring himself within the terms of his own contract, and any
evidence of directions to perform extra work or its value was
improperly admitted. (*Smith* v. *Briggs,* 3 Den. 73; *Reilly*
v. *Lee,* 41 N. Y. S. R. 559; *Byron* v. *Low,* 109 N. Y. 291;
*D. & H. C. Co.* v. *P. C. Co.,* 50 N. Y. 250.)

*M. E. Driscoll* for respondent.

O'BRIEN, J. This was an action to recover the value of
certain extra work performed by the plaintiff as contractor for
the erection of a school house. It seems that the board of
education of Syracuse has power to make contracts binding
upon the city for the erection of school houses. Sometime in
the year 1892 the board had entered into a contract with

other parties for the erection of the school house in question, but in the early part of December of that year the contractors so employed failed and abandoned the work, consequently it became necessary to complete the building either by contract with a new party or by day's work. On the 31st of December, 1892, the board entered into a written contract with the plaintiff for the completion of the building according to the original plans and specifications, taking up the work where the original contractors had abandoned it. At that time the walls were built up to the first floor joists and the greater part of the joists on that floor were set, but, as the outside walls had been improperly built, the architects, acting in behalf of the defendant, concluded that they should be taken down to the water table, and the contract provided that "all outside brick walls be taken down to the water table." It was also stipulated that the architects should have the right to make any alterations, additions or omissions with respect to the work or materials specified in the contract during the progress of the building that they might find to be necessary, and that the value of such alterations should be agreed upon between the city and the contractor before going into execution.

The plaintiff's contract required him to complete a building which had already been partially erected, and no time was specified for the commencement of the work. But it appears that on several occasions during the winter, after the execution of the contract, the plaintiff suggested to the architects having charge that he was ready to commence the work immediately and expressed a desire to do so. But they advised him to wait until the frost was out of the ground as the walls were in bad shape, and that it was not safe to build upon them in their then condition. About the 1st of April, 1893, the plaintiff commenced work on the building, and after a consultation with the architects it was concluded that the inside walls and piers should be taken down some distance, and some of them down to their foundations, because of their defective condition arising from the action of the water and frosts to which they had been exposed during the winter. It will be

seen that this required the plaintiff to do something entirely outside of the contract, since that required him to take down only the outside walls to the water table. It is agreed on all sides that this was extra work which the agents of the defendant had the power to contract for, and that is the only item involved in the contract that enters into this litigation. There was no dispute at the trial with respect to the value of this work. It was conceded to amount to $524.40, and for that amount and interest the trial judge directed a verdict for the plaintiff.

The only defense to this claim urged at the trial was based upon the provision of the contract which reads as follows : " Particular care must be taken of all the finished work as the building progresses, which work must be covered up and thoroughly protected from injury or defacement during the erection and completion of the building." It was claimed in behalf of the defendant that the extra work in removing the inside walls and substituting new work in its place was due to the neglect or omission of the plaintiff to observe this provision of the contract. It is urged that had he complied with it by covering up the walls during the preceding winter, the extra work which is the subject of this action would not have been necessary, and at the close of the case the defendant's counsel asked to go to the jury on the question as to whether the injury to the walls resulted from the failure on the part of the plaintiff to protect the work erected before the execution of his contract during the winter. The learned trial judge refused this request and held, as matter of law, that the contractor was under no obligation to protect the walls of the unfinished building during the winter. To this ruling there was an exception, which presents the only question of law in the case. We think the learned trial judge was clearly correct. The provision of the contract quoted manifestly referred to something that the plaintiff was bound to do during the progress of the work. It did not operate upon the plaintiff until his work commenced, and since that was postponed by mutual agreement until the following April, the contractor in the

meantime had nothing to do with the work thus far erected. During the winter the building was in the care and under the control of the city authorities, and it was their duty to protect the work already done and not that of the contractor. The provision of the contract had reference to the plaintiff's duties and obligations with respect to the care of the work and its preservation from the time he commenced it and took charge. It had no reference to the care and protection of the work already done, and until plaintiff's work under his contract for completion commenced the care and preservation of the incomplete building devolved upon the city. This, we think, is. quite apparent not only from the nature of the transaction but from the words of the stipulation itself. The plaintiff was bound to take care of the finished work as the building progresses. The obligation to protect the finished work commenced when the plaintiff's work commenced and not before. The city authorities could not under any fair construction of this provision require the plaintiff to postpone the performance of his contract until the following April and at the same time impose upon him the duty of caring for the old building in the meantime. That is not what the contract means. It may be that the contract when drawn contemplated the immediate commencement of the work, but since the city authorities required it to be commenced at a future day they had no right to require the plaintiff to assume any duty or obligation with respect to the old work, at least, until that day arrived. The plaintiff was to protect the work from injury during the "*erection and completion of the building.*" These words limit and fix the time during which the obligation rested upon the plaintiff. During the erection and completion of the building must mean during the period in which the plaintiff was engaged in performing his contract, commencing at the date when he took up the work and ending when he completed the building. So we think that the construction which the learned trial judge placed upon this part of the agreement was clearly correct, and since the request on the part of the defendant to go to the jury was based on a

contrary construction, the refusal to allow the jury to pass upon the question was not error.

There are some other exceptions in the case, but it is manifest that they are not of such a character as to require much notice or that could justify this court in interfering with the result.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment and order affirmed, with costs.